UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TIMOTHY J. KOMOSCAR, *et al.*, <br>     Plaintiffs, | ) <br> ) <br> ) |
| v. | )    CAUSE NO.: 2:15-CV-256-JVB-JPK |
| | ) |
| TAMARA G. LOOMIS, *et al.*, <br>     Defendants. | ) <br> ) |

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 113] filed by Defendants Brittany Schmidt and Tamara Loomis on November 19, 2018. Plaintiffs Timothy J. Komoscar and Kelly A. Komoscar (litigating individually and on behalf of minor children N.A.K., R.E.K., N.R.K., and A.J.K.) filed a response on December 14, 2018. Defendants filed a reply on January 7, 2019.

### **PROCEDURAL BACKGROUND**

The Komoscars filed their initial complaint in this Court on July 9, 2015, and filed their amended complaint on December 14, 2015. In the amended complaint, the Komoscars alleged claims against Michael Pence (who was then the governor of Indiana), Mary Beth Bonaventura, Terrance Ciboch, Louella Richey, and the Indiana Department of Child Services, but all of those claims have been resolved. Only the claims against Defendants Tamara Loomis and Brittney Schmidt remain pending.

The Komoscars bring claims for violations of their Fourteenth Amendment due process rights (both procedural and substantive due process violations are alleged) and Fourth Amendment rights to be free from unreasonable seizure as made enforceable by 42 U.S.C. § 1983.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter,

but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

## MATERIAL FACTS

On April 23, 2014, at school, R.K. picked at a mark on his arm, which started to bleed, so he went to the school nurse to get a bandage. (Defs.' Ex. D 18:1-2, ECF No. 114-4). The nurse asked how he got the mark, and R.K said that his mother (Kelly Komoscar) hit him with a toilet paper holder. *Id.* at 18:5-8. The Indiana Department of Child Services received a report the same day regarding this incident. (Defs.' Ex. I, ECF No. 114-9). The allegation narrative of the report states that R.K. went to school that day with an abrasion on his arm and that R.K. indicated that his mother hit him with the "metal pole from the toilet paper holder stand" on his arm, lower leg, and nose. *Id.* at 1.

Brittney Schmidt was assigned to investigate the Komoscar family based on the report. (Defs.' Ex. D 25:20-25, 26:23-25, ECF No. 114-5). Schmidt interviewed R.K. and N.R.K. separately at their school. *Id.* at 27:10-11; (Defs.' Ex. J 2, ECF No. 114-10). R.K. told Schmidt about the toilet paper holder incident as reported to the school nurse. (Defs.' Ex. J 2-3, ECF No. 114-10). N.R.K. corroborated R.K.'s report regarding the toilet paper holder and also told Schmidt that Kelly pushed R.K.'s head into the toilet to make him eat his feces and that Kelly did not let him spit the feces into the garbage can. *Id.* at 3. N.R.K. stated that Timothy was asleep when this happened, but he woke up and told Kelly that she had gone too far. *Id.* N.R.K. also reported that Kelly had hit A.K. in the mouth and had held a knife above R.K.'s head and threatened to kill him. *Id.* Schmidt spoke with R.K. again, asked him if anything happened in the bathroom near the toilet, and told R.K. that she had spoken with N.R.K. *Id.* R.K. stated that his mom made him lick his feces and that she had made him do so a few times. *Id.* At his July 26, 2017, deposition, R.K.

3

testified that he was lying when he said that Kelly hit him with the toilet paper hold and made him eat his feces, but he also testified that he did not tell Schmidt or Loomis that he was lying. (Defs.' Ex. D 47:11-48:4, ECF No. 114-4).

Schmidt determined that the children should be detained because of N.R.K.'s and R.K.'s statements that Kelly made R.K. eat his feces and because N.R.K. stated that Timothy became aware of what happened. (Defs.' Ex. E 37:6-38:6, ECF No. 114-5).

On Friday, April 25, 2014, the Porter County, Indiana, Juvenile Court issued an Order for Emergency Detention, which ordered the children to be immediately detained. (Defs.' Ex. S, ECF No. 115-4). A post-removal initial hearing was held on Monday, April 28, 2014. (Defs.' Ex. A 57:1-5, ECF No. 114-1; Defs.' Ex. T, ECF No. 115-5; Pls.' Ex. G, ECF No. 123-1). The Juvenile Court found:

> The removal of the children was authorized under Indiana Code 31-34-2 or 2.5, and necessary to protect the children. It is in the best interest of the children to be removed from the home environment and remaining in the home would be contrary to the health and welfare of the children based on the finding of probable cause, the allegations in the Petition, and the Report of Preliminary Inquiry.

(Ex. T, ECF No. 115-5). The Court further found that "[t]he children should continue to be detained because detention is necessary to protect the children." *Id.*; *accord* (Pls.' Ex. G, 76:21-77:11, ECF No. 123-1 (hearing transcript)). Loomis was assigned to the Komoscar case as the ongoing case manager. (Defs.' Ex. A 116:24-117:2).

At an April 29, 2014, forensic interview, R.K. stated that Kelly put R.K.'s head on the toilet seat, made him lick the toilet seat, and made him lick feces. (Defs.' Ex. DD, 23:25-27:45, ECF No. 116). At a separate forensic interview on the same day, N.R.K. stated that Kelly asked R.K. if he wanted to eat the feces, that Kelly stated that once in R.K.'s life he was going to eat feces and get sick, and that Kelly was trying to keep R.K. from getting sick. *Id.* at 1:04:30-1:05:12. N.R.K.

4

further stated that she had told Schmidt that Kelly made Rex eat feces but N.R.K. did not mean to say it. *Id.* at 1:20:00-1:22:25.

On May 22, 2014, Dr. Joel B. Schwartz saw R.K. and N.R.K. for the purpose of conducting hearsay evaluations. (Defs.' Ex. FF, ECF No. 115-14; Defs.' Ex. GG, ECF No. 115-15). Dr. Schwartz stated that he "did not get the impression that [R.K.] is an adolescent boy who would deliberately fabricate information," (Defs.' Ex. GG, 4), and that N.R.K. "does not appear to be prepared to be truthful," and that "her recantation of what she reported she originally observed appears to be related to underlying fears of self-guilt and anxiety," (Defs.' Ex. FF, 4).

On R.K.'s third visit from Porter-Starke Services, R.K. told the D.C.S. behaviorist that he fabricated the story that Kelly hit him with the toilet paper holder. (Pls.' Ex. A 124, 147-48, ECF No. 122-1). At this time, Kelly had not yet returned home. *Id.* at 148:21-22. According to Timothy's testimony, the behaviorist emailed D.C.S. to "inform them that this was false." *Id.* at 148:18-19, 24-25.

## ANALYSIS

The claims that remain pending against Defendants fall under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Plaintiffs allege unreasonable seizure, violations of substantive and procedural due process, malicious prosecution, violation of medical privacy, and violation of right to treatment.

### A. *Rooker-Feldman* Doctrine

Plaintiffs argue that Defendant Loomis "refused to disclose to Dr. Schwartz that R.E.K. was even in therapy, let alone that he never said anything about his allegations against Kelly

5

before" and that she inappropriately kept the case pending for two months after R.E.K. stated that he was lying. (Resp. 22, ECF No. 124). "[A]t minimum [due process] requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1020 (7th Cir. 2000) (citing *Malik v. Arapahoe Cty. Dept. of Social Serv.*, 191 F.3d 1306, 1315 (10th Cir. 1999)).

The *Rooker-Feldman* doctrine prevents this Court from reviewing state court decisions that allegedly injured a plaintiff. *See Coley v. Abell*, 682 F. App'x 476, 478 (7th Cir. 2017). The Seventh Circuit Court of Appeals has held that the *Rooker-Feldman* doctrine covers allegations that misstatements or lies made to the state court led to an adverse state court judgment. *Brokaw*, 235 F.3d at 1020 (citing *Harold v. Steel*, 773 F.3d 884, 886-87 (7th Cir. 2014); *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 605 (7th Cir. 2008)).

Assuming, without deciding, that these allegations regarding Loomis's refusal to disclose rise to the level of misrepresentation of facts, claims based on these allegations are barred by the *Rooker-Feldman* doctrine and are dismissed for lack of federal jurisdiction.

### B. Issue Preclusion

Defendants assert that all of Plaintiffs' remaining claims are barred by issue preclusion. Specifically, Defendants assert that the juvenile court's finding of probable cause prevents the Court from reaching the merits of Plaintiffs' claims. The Full Faith and Credit Statute mandates that this Court give judgments of Indiana courts the preclusive effect they would have in Indiana's state judicial system. 28 U.S.C. § 1738; *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017).

In Indiana, issue preclusion generally "bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit" and follows federal precedent. *Miller Brewing Co. v. Ind. Dept. of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). In deciding whether to apply

issue preclusion, Indiana courts ask two questions: (1) did the party in the prior suit have a full and fair opportunity to litigate the issue? and (2) given the facts of the particular case, is it otherwise unfair to apply issue preclusion? *Mains*, 852 F.3d at 676 (citing *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 705 (Ind. Ct. App. 2005)). "The non-exhaustive factors to be considered by the trial court in deciding whether to apply issue preclusion include: (1) privity, (2) the [party against whom issue preclusion is sought to be applied]'s incentive to litigate the prior action, and (3) the ability of the [party seeking to have issue preclusion applied] to have joined the prior action." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013) (citing *Indianapolis Downs, LLC*, 834 N.E.2d at 704-05).

Plaintiffs argue that issue preclusion does not apply because Defendants were not parties to the juvenile court proceeding. They cite Indiana cases for the proposition that an issue already adjudicated in a suit with the same parties leads to issue preclusion, but they ignore the more recent *Angelopoulos* and *Indianapolis Downs* decisions that indicate that privity of the parties is a factor and not a requirement.

Plaintiffs do not argue that probable cause was not actually decided in the state court proceeding. Indeed, the Porter County, Indiana, Juvenile Court found:

> The removal of the children was authorized under Indiana Code 31-34-2 or 2.5, and necessary to protect the children. It is in the best interest of the children to be removed from the home environment and remaining in the home would be contrary to the health and welfare of the children based on the finding of probable cause, the allegations in the Petition, and the Report of Preliminary Inquiry.

(Ex. T, ECF No. 115-5). The Court further found that "[t]he children should continue to be detained because detention is necessary to protect the children." *Id.* It is for the Court to determine whether issue preclusion should be applied to this finding of probable cause.

7

*1. Full and Fair Opportunity to Litigate*

The Porter County, Indiana, Juvenile Court order issued after the detention hearing reports as follows

> The Court advises the parents of the material allegations of the petition, the rights of the parents and children, the right to be represented by counsel, the dispositional alternatives available to the Court if the [c]hildren are adjudicated to be in need of services, the potential for parental participation, consequences for failure to comply, and financial responsibility.

(Ex. T, ECF No. 115-5). The Komoscar parents had notice of the detention hearing and were represented by counsel. They had the opportunity to testify and to call witness. Timothy Komoscar chose to testify. Dr. Hobart testified on behalf of the Komoscars. Plaintiffs identify nothing that prevented their ability to fully and fairly litigate the juvenile court proceeding. The Court finds that Plaintiffs had a full and fair opportunity to litigate the question of probable cause.

*2. Fairness Considerations*

As addressed above, Plaintiffs assert that Defendants' absence as parties in the juvenile proceeding is material to the issue preclusion question, but the Court is unconvinced. Defendant Schmidt was present and testified at the juvenile proceeding. Both Defendants were employed by the Indiana Department of Child Services, which was represented at the hearing. Nothing about this situation makes use of issue preclusion unfair.

The Court also finds that Plaintiffs had extremely high incentives to litigate the issue at the hearing. At stake was whether the children would remain with the parents, and the instant litigation is powerful proof of the parents' desire to retain custody of their children and the high value they place on their parental relationship with their children.

Defendants did not have the opportunity to join the prior action, though as mentioned above, Defendant Schmidt was a witness in that action. The juvenile proceeding is not a civil action that would have permitted the addition of parties such as Defendants.

8

Plaintiffs have not suggested that the Court should consider other factors in determining whether issue preclusion should apply here. The Court, in considering all of the circumstances of the earlier proceeding and the case at bar, finds that it is fair to apply issue preclusion here. Thus, it is determined by issue preclusion that probable cause existed for the removal of the Komoscar children on April 24, 2014.

### C. Effect of Issue Preclusion on Claims

Certain of Plaintiffs' remaining claims do not survive the application of issue preclusion. First, there is no Fourth Amendment violation when a seizure occurs without a court order but is supported by probable cause. *Brokaw*, 235 F.3d at 1010. Because probable cause is established by issue preclusion, there is no Fourth Amendment violation for the Komoscars' seizure before the court order was issued.

Parents' interest in the care and custody of their children is subject to the protection of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). Forced separation of family members implicates this substantive due process right. *Brokaw*, 235 F.3d at 1018. Thus, the Komoscar parents' substantive due process claim is properly analyzed under the Fourteenth Amendment based on a fundamental right to familial relations. *Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012); *Hernandez*, 657 F.3d at 480. The state's interest in protecting children from abuse outweighs an individual's liberty interest in familial integrity where the state has "definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Brokaw*, 235 F.3d at 1019.

A reasonable suspicion is less than probable cause. *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015). Here, the state court finding of probable cause regarding the Komoscar children necessarily includes a finding of the lower threshold of a reasonable suspicion, so issue

preclusion applies here as well. Defendants are entitled to summary judgment on this argument regarding the initial removal's restriction on the liberty interest in familial integrity.

Lastly, by Plaintiffs' own admission, malicious prosecution requires a lack of probable cause. (Resp. 23, ECF No. 124 (quoting *Hammond Lead Prods., Inc. v. Amer. Cyaniamid Co.*, 570 F.2d 668, 673 (7th Cir. 1977))). Because probable cause has been established by issue preclusion, Plaintiffs cannot prevail on this claim and Defendants are entitled to summary judgment on it.

### D. Continued Separation of the Komoscar Family

The Komoscars maintain that the separation of children from parents continued after Defendants ceased to have a reasonable suspicion that the children had been abused or were in imminent danger of abuse. "This 'reasonable suspicion' standard is an objective one." *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Terry v. Richardson*, 346 F.3d 781, 787 (7th Cir. 2003)). This argument is directed toward Defendant Loomis only. *See* (Resp. at 24, ECF No. 124).

Before reaching the question of reasonable suspicion, however, the Court must first consider whether Loomis is entitled to qualified immunity. The Komoscars bear the burden of showing that Loomis is not immune, which they can do if they demonstrate "(1) the defendant violated a constitutional right; and (2) the right was clearly established at the time, so that a reasonable state actor would know her conduct was unlawful." *Sebesta*, 878 F.3d at 233 (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)). For a right to be clearly established in the law, the right must be particularized to the facts of the case and cannot be defined at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 551-52 (2017).

Here, the Komoscars argue that the law clearly shows that continued detention after "probable cause" dissipates violates the rights of those detained, citing *Hernandez*. *Hernandez* does support this broad, generalized statement of the law and clarifies that if Defendants "obtained

10

additional information that eroded any reasonable basis for believing that [the children were] abused or [were] in imminent danger of abuse, keeping [them] in protective custody became unreasonable." *Hernandez*, 657 F.3d at 479.

Plaintiffs assert that R.K. disclosed to D.C.S.'s behaviorist that R.K. had fabricated the story that Kelly hit him with a toilet paper holder. Plaintiffs state in their response that this occurred on May 5, 2014, but the cited evidence reveals that the referral to Porter-Starke Services occurred on May 5 and that it was at the third visit from Porter-Starke Services that the behaviorist met with the Komoscars. (Pls.' Ex. A 124, 147-48, ECF No. 122-1). However, the evidence does indicate that Kelly had not yet returned to the home. *Id.* at 148:21-22. Timothy testified that the behaviorist advised that she emailed D.C.S. to "inform them that this was false," that is, presumably, that the alleged incident regarding the toilet paper holder and ingestion of feces did not occur. *Id.* at 148:18-19, 24-25.

In the context of this case, to defeat a qualified immunity defense, Plaintiffs must show that it was clearly established that the interference with their familial integrity rights was unconstitutional (that is, that Loomis no longer had a reasonable suspicion sufficient to interfere with those rights) after Loomis was informed by a behaviorist that the behaviorist did not believe that the original allegations were true after R.K. disclosed that he had fabricated the story. Plaintiffs identify no source of law to support a theory that, between conflicting accounts given by one believed to be a victim, a caseworker must believe the more recent account or the account denying victimhood. Plaintiffs identify no source of law to support a theory that behaviorists' opinions outweigh those of caseworkers.[1] Plaintiffs present their argument only at a high level of generality, and the argument fails. It was not clearly established that the change in R.K.'s account of the events

---

[1] At the July 15, 2014 Fact Finding Hearing, Loomis testified that she believed R.K.'s and N.A.K.'s initial account of what happened in the bathroom. (Defs.' Ex. BB 15:8-13, ECF No. 115-13).

11

and the opinion of the behaviorist meant that there was no longer a reasonable suspicion to constitutionally justify the Komoscar family separation. Loomis is entitled to qualified immunity on this argument.

Similarly, because it was not clearly established that there was no reasonable suspicion, obtaining the consent to a safety plan as a condition of reunification with the children was a "lawful threat" and not impermissible "coercion." *See Dupuy v. Samuels*, 465 F.3d 757, 762 (7th Cir. 2006).

### E. Other Matters

Regarding procedural due process, Indiana law provides that a postremoval hearing shall occur within forty-eight hours (weekends and legal holidays excluded) of a child being taken into custody. Ind. Code 31-34-5-1. The initial removal occurred on a Friday, which was followed by a probable cause hearing on the following Monday. The Komoscars received a prompt postremoval probable cause hearing, so they received due process. *See Coley*, 682 F. App'x at 478 (citing Ind. Code § 31-34-5-1(a); *Jensen v. Foley*, 295 F.3d 745, 747 (7th Cir. 2002)) (holding that a postremoval probable cause hearing satisfies procedural due process when the hearing is held within the timeframe required by statute).

Plaintiffs make no argument and present no evidence to support their right to treatment and information privacy claims. Because Plaintiffs would bear the burden of proof of these claims at trial, summary judgment in favor of Defendants on these matters is warranted.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment [DE 113]. The claims of deprivations of constitutional rights through misrepresentations

made to the state court are **DISMISSED without prejudice** for lack of federal jurisdiction. On the remaining claims, the Court **GRANTS** summary judgment in favor of Defendants.

SO ORDERED on June 10, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT